# Shepherd *et al.* v. Reeves & Co. *et al.*

*Bill in Equity by Creditors of a Partnership to set aside Fraudulent Conveyance.*

1. *Fraudulent conveyance to wife; partnership assets.*—On a bill filed by creditors of a partnership to subject to the payment of their demands a lot of land which was conveyed to the wife of one of the partners, and a house built thereon by said partner, it was shown that the said partnership was insolvent, and that with knowledge of its insolvency and of its indebtedness to complainants, the member of the firm, who was its business manager, took funds and effects of said firm and bought a lot, which he caused to be conveyed to his wife, and then built a house thereon with funds he drew from the partnership assets ; the several sums so drawn being charged to said partner's account. Both said partner and his wife testified that the

[Shepherd *et al.* v. Reeves & Co. *et al.*]

money furnished to build the house was in payment of a debt from the firm to said wife, but the wife held no evidence of such debt, nor was there any account whatever, either debit or credit, between her and the firm on its books, and her testimony as to the sources from which she derived the money claimed to have been loaned the firm was vague, indefinite and far from satisfactory. *Held :* That the property was put in the name of the wife to hinder, delay or defraud the creditors of the partnership, and that it should be subjected to the payment of complainants' demands as in truth and in fact assets of said firm.

APPEAL from the Chancery Court of Fayette.

Heard before the Hon. THOMAS COBBS.

The bill in this case was filed by the appellees against the appellants ; and sought to have set aside and declared fraudulent and void a conveyance to Matelia Shepherd, one of the defendants, of a house and lot ; to have the property subjected to the payment of the complainants' judgment against the mercantile firms of McDuff & Co. and Easterlin & Co., of which firms, W. H. Shepherd, the husband of Matelia Shepherd, was a member. The ground of the relief prayed for and the facts in reference to the conveyance sought to be set aside are sufficiently stated in the opinion.

Upon the final submission of the cause, on the pleadings and proof, the chancellor decreed that the complainants were entitled to the relief prayed for and ordered accordingly. From this decree the present appeal is prosecuted, and the rendition thereof is assigned as error.

JONES, MAYFIELD & BROWN, for appellant.—In the absence of fraud on the part of the partners to defraud the creditors, the creditors have no more or greater rights to pursue the property of the partnership than have the partners. The creditors of a partnership must work out their rights to subject property held by third parties to the payment of partnership debts through the rights of the partners so to do.

2.   The assets of an insolvent partnership are not a trust fund, and creditors thereof have no lien on them. *Hanover v. Klein,* 64 Miss. 141 ; *Schmidlapp & Bros. v. Currie,* 55 Miss. 597. By consent of the partners the funds of the partnership may be applied to the payment of the debts of an individual partner.— *Wallace v. Steagall,* 52 Ill. App. 304 ; *Sylvester v. Henrich,* 61 N. W. Rep.

942; *Hanover National Bank v. Klein,* 64 Miss. 141; *Schmidlapp & Bro. v. Currie,* 55 Miss. 597. Where the wives of members of mercantile partnerships buy goods from such firms and credit the price thereof on the notes of their husbands to them, such transfers are not void as to the creditors of the firms.—*Farewell v. Stick,* 61 N. W. Rep. 565. Where a wife places in her husband's hands her own money, which he places in a firm of which he was a member and the firm gave its note therefor, and afterwards a member of the firm conveyed to the husband certain land in consideration of this note, it was held that the wife was entitled to a claim on said lands as against the firm's creditors to the extent of her money.—*Hill v. Cornwall,* 26 S. W. Rep. 540. Where members of a firm borrow money on their own account, but use it in the firm's business, a mortgage on the firm property to secure such debts is valid as against the firm's creditors.—*Wiggins v. Blackshear,* 26 S. W. Rep. 939; *Veal v. Keely Co.,* 86 Ga. 130. The weight of authority seems to be that mere insolvency where no actual fraud intervenes will not deprive the partners of their legal control over the property and of the right to dispose of it as they may choose; and where the creditor purchases from the firm in good faith, and the individual indebtness is at a fair price for the property purchased, such purchase cannot of itself, be held fraudulent as against the general creditors.—*Wood Mossie v. Holcombe,* 34 Kan. 34; *Schmidlapp v. Currie,* 55 Miss. 597; 30 Amer. Rep. 533; *Case v. Beauregard,* 99 U. S. 119; *Menagh v. Whitwell,* 52 N. Y. 146; *Arnold v. Hagerman,* 45 N. J. Eq. 186; *Nat. Bank v. Sprague,* 20 N. J. Eq. 13; *Rice v. Barnard,* 20 Vt. 479; *Freeman v. Stewart,* 41 Miss. 138.

J. H. McGuire and Daniel Collier, *contra.*—The facts disclosed by the averments of the bill and by the proof of the complainants cast upon Mrs. Shepherd, the alleged voluntary donee, not only the burden of proof to clear away the presumption of fraud, but it cast upon her the burden and duty of setting up in her answer, not merely a denial of said averments of fraud, as appears in this case, but a clear, consistent statement of all the facts relied on by her, to rebut the imputation of fraud cast upon her by the bill. She did neither of these im-

portant things, and hence the decree was right.—*Yeend v. Weeks*, 104 Ala. 330; *Cartwright v. Bamberger*, 90 Ala. 410; *Ware v. Hamilton*, 92 Ala. 146; *Murray v. Heard*, 103 Ala. 400; *Giovanni v. Bank*, 55 Ala. 305.

McCLELLAN, J.—This is a bill by creditors of a partnership to subject to the payment of their demands a lot of land which, it is alleged, was purchased by one of the partners with partnership funds, the conveyance being made to his wife, and a house built thereon by the husband also with funds belonging to the partnership. W. H. Shepherd, it is alleged, was the member of the partnership who so diverted its assets; and in respect of him and such diversion, the bill contains the following averments: "That said Shepherd was the business manager of the partnership and acted as salesman, collector, purchaser, &c., and, in fact, managed and controlled the business in all respects and handled the cash thereof; and that said Shepherd, whilst said firm was indebted to complainants, but before judgment for the debts had been rendered, well knowing that the assets of said firm were wholly insufficient to pay its debts, and that said firm was in fact insolvent, took funds and effects of said firm from the general assets thereof, and therewith built and erected a two story residence for himself and family to live in, worth at least two thousand dollars, upon a lot which he purchased and paid for with such funds, taken, as aforefaid, from the assets of said firm, with intent thereby to hinder, delay or defraud said creditors and complainants out of their just rights, and satisfaction of their just demands out of said funds so abstracted, as aforesaid from said business; and complainants state and charge that they and said other existing creditors were entitled to and had a lien upon said funds for the payment of partnership debts which was superior to any right which said Shepherd had or could have acquired by reason of his appropriation thereof, as aforesaid, for the purchase of said lot and the erection of said dwelling house and other appurtenances; and, therefore, whatever might have been the intent upon the part of said Shepherd, with which he so appropriated said funds, the same legal effect would and did result or flow therefrom, that is to say, it is a transaction which the law condemns as fraudulent as against your orators

and other creditors ; and that title or deed to said lot was taken in the name of said W. H. Shepherd's wife, Martelia Shepherd, from the vendor to said W. H. Shepherd . of said lot." The answer (of Martelia Shepherd and W. H. Shepherd, we suppose, though not stated in the abstract) "denied the averments of the bill as to the house and lot in question, and alleged that the lot was purchased and house built by Martelia Shepherd with her own means and at her own expense, that the partnership was largely indebted to her at the time, in an amount much greater than what she received from the company towards building the house and purchasing the lot."

Both W. H. Shepherd and his wife, Martelia Shepherd, admit in their answers and depose as witnesses that money to purchase the lot and money and materials to build the house thereon was supplied by or came from the partnership, and out of its funds and effects ; and the answers and testimony exclude the idea that any money or effects of W. H. Shepherd individually were used either in the purchase or improvement of the lot. They aver and depose, however, that the partnership was indebted to her in the sum of $600, and the money and material supplied by the firm was in the way of payment of this indebtedness to her. So that the issue is brought down to this : Was the firm indebted to her in the amount of funds or effects belonging to it which went into this property, and were such funds or effects paid or delivered to her on this indebtedness? In the first place, W. H. Shepherd purchased the lot of land from Mrs. Berry in his own name, had a deed drawn and signed purporting to convey it to himself and wife, and paid for it in part by crediting an account which Mrs. Berry owed the firm, and in other part with money which must have come from the same source, as Shepherd testifies that none of his own money was so used, and Mrs. Shepherd claims neither that she furnished the money thus paid directly, nor that it was paid by the firm for her as a credit on its indebtedness to her. Indeed, while she testifies that the residence on the lot was built with her money, she nowhere says that the lot was paid for with her money. So much, for the moment, as to the purchase money of the lot. In respect of the money with which the house was built, it appears from

the books of the company that it was supplied, not to Mrs. Shepherd at all, but to W. H. Shepherd, that Shepherd himself took it from the funds of the company and charged it to himself. This, in our opinion, made a *prima facie* case for the relief prayed as to the house and lot, and put upon Mrs. Shepherd the burden of showing that the firm was indebted to her, and that the money and material expended and used in building the house were furnished on that account. We do not think she has discharged that burden. To begin with, it is an infirmative circumstance that she took no note or other evidence of the firm's alleged indebtedness to her. Again, if it had been so indebted and set about the payment of such debt, it is to the last degree improbable and unreasonable that it should have charged the payments as ordinary items of indebtedness to W. H. Shepherd instead of entering them as credits on her account against the partnership. Moreover, not only does it not appear that she had any evidence or even memorandum of her claim against the firm, but it does not appear that there was any account whatever between her and the firm, either of debit or credit, on its books. Then, too, her testimony as to the sources whence she had or received the money she claims to have loaned the firm is far from satisfactory. She says "the money came from my property, from my father's estate," and she gave a mortgage on a place and borrowed $300 of the $600 that was in the store, but the mortgage is not produced, nor its date given. She says she had about $150 a year rent on a place; but whether more or less than $150, and how much more or less, and what place, is not specified; and that the firm "had about two years' rent of this place." These indefinite places thus mortgaged and rented came, she says, from her father's estate. He died about thirty years before she was testifying. She confessed her inability to state the value of the property which thus came to her, and also state the value of her own and her husband's estates. And she makes no pretense whatever that she at the time of these transactions had any money except what the firm owed her, so that she could not have supplied the money which in part paid for the lot. Add to all this the fact that the deed which was originally drawn, signed and delivered, but not attested or acknowledged, was surrendered by Shep-

herd, and another made at his request to Mrs. Shepherd alone, more than six months after the original deed and after the house had been built with the funds of the partnership taken by Shepherd and charged to him, and the conclusion is fairly and reasonably assured that this whole idea about the lot being purchased and paid for and the house being built with her funds is an afterthought, having existence only as a part of a scheme to save the property from the just demands of the partnership creditors, these complainants among the number; and we concur with the chancellor that they were entitled to subject it to their debts as in truth and in fact assets of the firm.

Whatever may be the present value of the house and lot, we do not find that any money or material entered into the purchase of the one or the erection of the other which did not belong to the partnership; and there is, therefore, no merit in the suggestion that in any event the compainants are entitled to only so much of the proceeds of a sale of the property as will equal the amount of partnership assets affirmatively and certainly traced into it.

Affirmed.